UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOAN FRASER,

                              Plaintiff,

          -against-

CITY of NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, and POLICE OFFICERS JOHN
DOE 1-5

                              Defendants.

**MEMORANDUM & ORDER**
**20-CV-5741 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff, Joan Fraser, brings this action against the City of New York (the "City"), the New York City Police Department (the "NYPD"), and five unnamed NYPD officers (the "Officers"). Ms. Fraser asserts claims under the First, Fourth, and Fourteenth Amendments, and for assault and battery, intentional and negligent infliction of emotional distress, and negligent hiring, retention, and supervision. Additionally, Ms. Fraser alleges two *Monell* claims against the City for its unconstitutional policies and inadequate training of police officers. The City filed a partial motion to dismiss Ms. Fraser's First and Fourteenth Amendment claims, intentional and negligent infliction of emotional distress claims, negligent hiring, retention, and supervision claim, and *Monell* claims. The City also contends that the NYPD should be removed as a defendant since it is not a suable entity and that Ms. Fraser should be prohibited from making additional amendments to her complaint.

For the reasons set forth below, the City's motion to dismiss Ms. Fraser's Fourteenth Amendment claim, intentional and negligent infliction of emotional distress claims, negligent hiring, retention, and supervision claim, and *Monell* claim for unconstitutional policies is GRANTED. The City's motion to dismiss Ms. Fraser's First

Amendment claim and *Monell* claim for inadequate training is
DENIED. The NYPD is removed as a Defendant because the
NYPD is not a suable entity. The court declines to issue an order
prohibiting further amendments to the complaint.

## I.   BACKGROUND

The following summary is drawn from the facts alleged in the
Amended Complaint, which the court accepts as true. *See N.Y.
Pet Welfare Ass'n v. City of N.Y.*, 850 F.3d 79, 86 (2d. Cir. 2017).[1]

Ms. Fraser attended and recorded a protest in Brooklyn on May
29, 2020, following the death of George Floyd. (Am. Compl.
(Dkt. 14) ¶¶ 13, 17.) At approximately 10:15 p.m., near the in-
tersection of Classon and Lafayette Avenues, one or more NYPD
officers struck her twice, using their hands and batons. (*Id.* ¶¶ 13,
18.) Ms. Fraser alleges that she was "violently knocked . . . to the
ground," which caused "severe, serious, and permanent injuries."
(*Id.* ¶ 19.) Ms. Fraser was treated in an ambulance at the scene
and sought follow-up treatment the next day at a local hospital.
(*Id.* ¶¶ 21-23.) Ms. Fraser continues to require medical care for
the injuries sustained. (*Id.* ¶ 23.)

## II.   STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim under Federal
Rule of Civil Procedure 12(b)(6), the court assesses "the legal
sufficiency of the complaint, taking its factual allegations to be
true and drawing all reasonable inferences in the plaintiff's fa-
vor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The
complaint must "state a claim [for] relief that is plausible on its
face" by "plead[ing] factual content that allows the court to draw
the reasonable inference that the defendant is liable for the mis-
conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] When quoting cases, and unless otherwise noted, all citations and quota-
tion marks are omitted, and all alterations are adopted.

"Mere labels and conclusions or formulaic recitations of the elements of a cause of action will not do; rather, the complaint's *factual* allegations must be enough to raise a right to relief above the speculative level." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (emphasis in original).

## III. DISCUSSION

### A. NYPD as a Suable Entity

The City argues that the NYPD should be removed as a defendant since it is not a suable entity. The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency." N.Y.C. Charter Ch. 17 § 396. The NYPD is an agency of the City of New York and is therefore a non-suable entity. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (affirming the district court's dismissal of claims against the NYPD as a non-suable entity). Accordingly, the City's motion to remove the NYPD as a defendant is GRANTED. The case may proceed against the City, and if Ms. Fraser ascertains the identities of the John Doe police officers such that she may properly serve them, the case may proceed against them as well.

### B. Constitutional Claims

The City moves to dismiss Ms. Fraser's claims that (i) the Officers' use of excessive force and indifference to her medical needs violated her rights under the Fourteenth Amendment, and (ii) the Officers violated her rights under the First Amendment, as incorporated by the Fourteenth Amendment.

#### 1. Fourteenth Amendment Claim

Ms. Fraser alleges that Defendants violated her Fourteenth Amendment rights when they restrained her, which "depriv[ed] her of her personal liberty," and when they "fail[ed] to properly

3

and adequately address" her "physical injuries." (Am. Compl. ¶¶ 100-07.)

###### a.   *Excessive Force*

When a plaintiff brings both Fourth and Fourteenth Amendment claims that arise out of the same conduct by defendants, the two claims may not proceed simultaneously. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Bogart v. City of N.Y.*, No. 13-CV-1017 (NRB), 2016 WL 4939075, at *7 (S.D.N.Y. Sept. 6, 2016).[2] In these circumstances, courts must "identif[y] the specific constitutional right allegedly infringed by the challenged application of force" and judge the claim by "reference to the specific constitutional standard which governs that right." *Graham*, 490 U.S. at 394-95 (expressing a preference for "an explicit textual source of constitutional protection" over "the more generalized notion of substantive due process").

Excessive force claims arising out of an arrest or seizure are evaluated under the Fourth Amendment using an "objective reasonableness" standard. *See id.* at 397-98 (explaining that this covers "excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen"). Where plaintiffs do not allege "that they were arrested or seized," courts analyze the use of excessive force under the Fourteenth Amendment's more stringent "shocks the conscience" standard. *Tierney v. Davidson*, 133 F. 3d 189, 199 (2d Cir. 1998).

Because Ms. Fraser's Fourteenth and Fourth Amendment claims rely on the same alleged use of excessive force, the court cannot allow both to proceed and must determine which constitutional right was specifically infringed in this case. Ms. Fraser alleges that the Officers "wrongly and affirmatively restrain[ed]" her, "depriving her of her personal liberty, by twice forcibly pushing and

---

[2] The City has moved to dismiss the Fourteenth Amendment claim but not the Fourth Amendment claim.

striking her, and pushing her to the ground." (Am. Compl. ¶ 102.) The court thus finds that the Fourth Amendment addresses the specific constitutional right allegedly infringed because Ms. Fraser alleges that she was seized in the course of this incident. *See Graham*, 490 U.S. at 395; (*see also* Am. Compl. ¶ 15.) Accordingly, Ms. Fraser's excessive force claim may proceed under the Fourth Amendment standard. However, her Fourteenth Amendment excessive force claim cannot proceed.

### b. *Deliberate Indifference to Medical Needs*

Ms. Fraser also alleges that Defendants "were deliberately indifferent to [her] condition and needs," in violation of the Fourteenth Amendment. (*Id.* ¶ 104.) Since the allegations about the seizure and force are more appropriately brought under the Fourth Amendment, the court construes the deliberate indifference claim to concern the alleged failure to "properly and adequately address [her] physical injuries." (*Id.* ¶ 103.)

"[T]he Supreme Court has recognized that conduct exhibiting 'deliberate indifference' to harm can support a substantive due process claim," where the conduct shocks the conscience. *Lombardi v. Whitman*, 485 F.3d 73, 82 (2d Cir. 2007).[3] The Court explained that:

> [d]eliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of

---

[3] Though Ms. Fraser alleges that she "was in the custody of the Defendants," (Am. Compl. ¶ 101), she has not alleged that she was handcuffed, arrested, or brought to a police precinct or vehicle. Since Ms. Fraser was not in custody at the time of the incident, she can bring her deliberate indifference claim only under the Fourteenth Amendment, not under the Eighth Amendment. *See DeShaney v. Winnebago Cnty. Dept' of Soc. Servs.*, 489 U.S. 189, 198-200 (1989).

substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking.

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998). In *Lewis*, the Court held that police conduct during a car chase does not reach this conscience-shocking level without the "intent to harm suspects physically or to worsen their legal plight." *Id.* at 854. Courts up to and including the Supreme Court have differentiated between "occasion[s] calling for fast action" and instances where officials "hav[e] time to make unhurried judgments." *Id.* at 851-53 ("As the very term 'deliberate indifference' implies, the standard is sensibly employed only when actual deliberation is practical."). In these fast-action situations, courts have noted that "when unforeseen circumstances demand an officer's instant judgment," the standard for what shocks the conscience is even higher. *Id.* at 852-53. Neither negligently inflicted harm nor "an intermediate level of fault, such as recklessness is . . . enough to impose constitutional liability." *Pena v. DePrisco*, 432 F.3d 98, 113 (2d Cir. 2005).

Here, the Officers were responding to the protest and did not have time to deliberate, so a more demanding standard for deliberate indifference is appropriate. Ms. Fraser has not pleaded any facts indicating that the Officers "fail[ed] to properly and adequately address [her] physical injuries," (*see* Am. Compl. ¶ 103)—certainly not to the conscience-shocking level required for a finding of deliberate indifference. She apparently quickly made her way to an ambulance on the scene after the alleged assault. Thus, she has failed to raise a cognizable claim for deliberate indifference under the Fourteenth Amendment.

*     *     *

Accordingly, because Ms. Fraser's Fourteenth Amendment excessive force claim is more appropriately brought under the Fourth

Amendment, and her deliberate indifference claim is not cognizable, the City's motion to dismiss the Fourteenth Amendment claim is GRANTED.

### 2.   First Amendment Claim

Ms. Fraser claims that Defendants violated her First and Fourteenth Amendment rights "by engaging in conduct that is shocking to the conscience and is offensive to the community's sense of fair play and decency," and that Defendants were aware of the violations of her rights because the "First Amendment Right to freedom of expression and speech is a Right that is so clearly established that a reasonable person under the circumstances presented herein would have known the said conduct was a violation," specifically her right "to assemble for peaceful and lawful protests." (Am. Compl. ¶¶ 41, 44, 46.) The City moves to dismiss this cause of action because "it is duplicative of [her] excessive force claim under the Fourth Amendment," and she "fails to clearly allege what this conduct is." (Mem. in Supp. of Mot. to Dismiss ("Mot.") (Dkt. 20) at 9.)

As to the City's claim that Ms. Fraser's First Amendment claim is duplicative of her Fourth Amendment claim, a plaintiff may allege First and Fourth Amendment claims arising out of the same alleged conduct. *See Salmon v. Blesser*, 802 F.3d 249, 255-56 (2d Cir. 2015) (finding that the plaintiff could have properly alleged both First and Fourth Amendment claims had plaintiff sufficiently asserted he was exercising his First Amendment rights at the time the officers used force); *Pluma v. City of N.Y.*, No. 13-CV-2017 (LAP), 2015 WL 1623828, at *6-*8 (S.D.N.Y. 2015) (reasoning that plaintiff could have brought a Fourth Amendment excessive force claim and a First Amendment claim had the plaintiff alleged facts that satisfied the requirements of each claim). Consequently, the court declines to dismiss Ms. Fraser's claim on that basis.

As to the City's claim that Ms. Fraser has not clearly alleged what the conduct is, the court agrees that the Amended Complaint could more clearly apprise the court of the First Amendment conduct. However, that is not fatal here.

"To state a First Amendment claim, a plaintiff must allege facts admitting a plausible inference that the defendant's actions restricted, or were retaliation against, speech or conduct protected by the First Amendment." *Salmon*, 802 F.3d at 255. Ms. Fraser alleges sufficient facts to establish that she was plausibly engaging in expressive conduct protected by the First Amendment at the time of the incident: She asserts that Defendants prevented her from attending a protest and recording police activity. (Am. Compl. ¶ 44.) Attending a protest is clearly protected under the First Amendment. *See Cox v. Louisiana*, 379 U.S. 559, 574 (1965). Courts in this circuit have found that recording police activity is also protected under the First Amendment. *See Higginbotham v. City of N.Y.*, 105 F. Supp. 3d 369, 380 (S.D.N.Y. 2015) (holding that the First Amendment protects the filming of police activity); *Pluma*, 2015 WL 1623828, at *6-*8 (S.D.N.Y. 2015) (same, and noting that "some Courts of Appeals have held that the First Amendment protects the right to film the police," but "neither the Supreme Court nor the Second Circuit has addressed [it]").

At the motion to dismiss stage, the court finds that these allegations amount to a plausible inference that the Defendants restricted Ms. Fraser's First Amendment conduct by interfering with her ability to participate in and record the protest. The court recognizes, however, "that the claim, like all claims, may look very different at the summary judgment stage." *Marom v. City of N.Y.*, 15-CV-2017 (PKC), 2016 WL 916424, at *11 (S.D.N.Y. Mar. 7, 2016). For these reasons, the City's motion to dismiss Ms. Fraser's First Amendment claim is DENIED.

### C.   State Law Tort Claims

The City has also moved to dismiss Ms. Fraser's claims of intentional infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), and negligent hiring, retention, and supervision.

#### 1.   Intentional Infliction of Emotional Distress

Defendants move to dismiss Ms. Fraser's IIED claim because she also alleges assault and battery, a traditional tort, arising out of the same set of facts. Under New York law, an IIED claim may "be invoked only as a last resort," *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014), "to provide relief in those circumstances where traditional theories of recovery do not," *Sheila C. v. Povich*, 781 N.Y.S. 2d 342, 351 (1st Dep't 2004). As a result, the New York Court of Appeals has considered the possibility that an IIED claim can never be brought when the challenged conduct "falls well within the ambit of other traditional tort liability." *Fischer v. Maloney*, 43 N.Y.2d 553, 557-58 (1978). The four appellate division courts in New York have concluded that it may not. *See Salmon*, 802 F.3d at 256 (collecting cases). Thus, courts in this circuit have consistently concluded that IIED claims are duplicative of traditional tort claims. *See, e.g., id.* at 256-57 (holding that where the challenged conduct "would have been actionable under state law as a battery," the IIED claim was properly dismissed); *Rubio v. Cnty. of Suffolk*, No. 01-CV-1806 (TCP), 2007 WL 2993830, at *5 (E.D.N.Y. Oct. 9, 2007) (holding that the IIED claim was duplicative of other state tort claims, including assault and battery).

Ms. Fraser's IIED claim fails because "the conduct complained of falls well within the ambit of other traditional tort liability." *Turley*, 774 F.3d at 159. Specifically, the challenged conduct amounts to an assault, and Ms. Fraser has alleged assault as a cause of action in the Amended Complaint. Accordingly, the

City's motion to dismiss Ms. Fraser's claim for intentional inflic-
tion of intentional distress is GRANTED.

2.   Negligent Infliction of Emotional Distress

Defendants move to dismiss Ms. Fraser's NIED claim because, as
with IIED claims, a claim for NIED should be asserted as a last
resort. Courts in the Second Circuit have described NIED claims
as "an even greater stretch" than IIED claims given "the narrow
band of negligent emotional distress cases recognized under New
York law." *Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 386
(E.D.N.Y 2021); *see also Broadnax v. Gonzalez*, 2 N.Y.3d 148, 153
(2004) (explaining that New York courts have shown a
"longstanding reluctance to recognize causes of action for negli-
gent infliction of emotional distress").

As a result, NIED claims are generally dismissed when the claim
arises out of the same facts that give rise to a traditional tort
cause of action. *See, e.g., Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d
341, 364 (S.D.N.Y 2021) (dismissing NIED claim because "the
allegations supporting the NIED claim track the allegations sup-
porting plaintiff's negligent screening, hiring, and supervision
claim, as well as her negligence claim"); *Buoniello v. Ethicon
Women's Health & Urology*, No. 19-CV-4021 (DRH) (ARL), 2020
WL 5802276, at *4 (E.D.N.Y. Sept. 29, 2020) (dismissing plain-
tiff's NIED claim because it was duplicative of other tort causes
of action); *Berrio v. City of N.Y.*, No. 15-CV-9570 (ALC), 2017 WL
118024, at *7 (S.D.N.Y. Jan. 10, 2017) ("New York does not rec-
ognize NIED or IIED causes of action where the conduct
underlying them may be addressed through traditional tort rem-
edies."); *C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp.
3d 307, 327-28 (E.D.N.Y. 2016) (granting summary judgment to
defendants on NIED claim because it "mirror[ed]" another tort
claim).

Like her IIED claim, Ms. Fraser's NIED claim arises out of the
same facts and circumstances as her claim for assault and battery,

a traditional tort claim. (*See* Am. Compl. ¶¶ 61-69.) And she has not provided any basis on which the court can conclude that this claim is distinct. Ms. Fraser therefore cannot pursue the same claim under a NIED theory. Accordingly, the City's motion to dismiss the negligent infliction of emotional distress claim is GRANTED.

### 3.   Negligent Hiring, Supervision, and Retention

The City argues that Ms. Fraser's negligent hiring, supervision, and retention claim fails because the Officers were acting within the scope of their employment. Under New York law, a plaintiff may state a claim for negligent hiring, supervision, or retention, by showing, "in addition to the standard elements of negligence,"

> (1) that the tort-feasor and the defendant were in an employee-employer relationship . . . ; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence . . . ; and (3) that the tort was committed on the employer's premises or with the employer's chattels.

*Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004). "Generally, where an employee is acting within the scope of his or her employment . . . , no claim may proceed against the employer for negligent hiring or retention." *Karoon v. N.Y.C. Transit Auth.*, 659 N.Y.S.2d 27, 29 (1st Dep't 1997) (granting defendant New York City Transit Authority summary judgment on negligent hiring, retention, and training claim because bus driver was acting within the scope of employment). As a result, courts in this circuit have consistently dismissed negligent hiring, retention, and supervision claims where the defendant was acting within the scope of employment. *See, e.g.*, *Paul v. City of N.Y.*, No. 16-CV-1952 (VSB), 2017 WL 4271648, at *7 (S.D.N.Y. Sept. 25, 2017) (dismissing negligent hiring, training, and supervision claim because "there are no allegations in the Amended Complaint that the officers were at any point acting outside the scope

of their duties and none of the facts as alleged directly or inferentially supports such a finding"); *Melvin v. Cnty. of Westchester*, No. 14-CV-2995 (KMK), 2016 WL 1254394, at *21 (S.D.N.Y. Mar. 29, 2016) (dismissing negligent hiring, retention, and training claim because there were no allegations in the complaint that the defendants "were acting outside scope of employment during the course of events giving rise to Plaintiff's claim").

Here, the Officers were acting within the scope of their employment as police officers at the protest. They were not attending in their personal capacities. Ms. Fraser concedes as much, as she alleges that "Defendants POLICE OFFICERS . . . at all times herein were acting in such capacity as the agent, servants, and/or employees of the City and NYPD, within the scope of their employment." (Am. Compl. ¶¶ 12-13.)

Notwithstanding the case law in this circuit, Ms. Fraser argues that *Jaquez v. City of New York* supports her position. *See* No. 10-CV-2881 (KBF), 2014 WL 2696567 (S.D.N.Y. June 9, 2014). She argues that the *Jacquez* court "held that an alternative pleading . . . is satisfied when, like here, plaintiff alleges that the Defendants City and NYPD, and their delegated supervisors *knew or should have known* of Defendant-Officer's propensity for their illegal conduct." (Opp. at 21.) However, Ms. Fraser appears to misunderstand the holding in *Jacquez*. Like Ms. Fraser, the plaintiffs in *Jacquez* pleaded that "the City knew or should have known that the individual defendants were likely to engage in the conduct that caused . . . death." 2014 WL 2696567, at *7. But the court held that this claim failed as a matter of law because "plaintiffs have failed to allege, even in the alternative, that the individual defendants were acting outside the scope of their employment at the time of the alleged misconduct." *Id.* So too here, Ms. Fraser has not pled in the alternative that the Officers were acting outside the scope of their employment.

Because the Officers were acting in the scope of their employment, and Ms. Fraser has not pled in the alternative that the Officers were acting outside the scope of their employment, the City's motion to dismiss her claim for negligent hiring, supervision, and retention is GRANTED.

### D.  Municipal Liability Claims

A municipality may be held liable under 42 U.S.C. § 1983 when a plaintiff's injury is the result of municipal policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). On a motion to dismiss, the "mere assertion . . . that a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Montero v. City of Yonkers*, 890 F.3d 386, 403-04 (2d Cir. 2018). A municipality may be held liable under § 1983 for the constitutional violations of its employees that "may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. Thus, "[t]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove . . . : (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007). But a municipality may not be held liable solely "by application of the doctrine of *respondeat superior*." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). And "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998).

Ms. Fraser alleges that the City and NYPD "promulgated official Policies, Rules, and Regulations" that "allow[], permit[], and encourag[e] the use of Excessive Force" and that the City inadequately trains police officers. (Am. Compl. ¶¶ 78-99.)

1.   Unconstitutional Policy

To bring a *Monell* claim for an unconstitutional policy, the plaintiff must show that an "action pursuant to official municipal policy caused the[] injury," which "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011). At the pleading stage, the court "does not impose a probability requirement . . . ; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence." *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).

The City argues that this claim should be dismissed because single acts of excessive force by non-policymaking municipal employees, *i.e.,* police officers, are not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability under § 1983. A single incident is usually not sufficient because the municipality could have acted properly and merely hired a "bad apple," who acted in violation of others' constitutional rights. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985). However, a single act may justify liability of the municipality when a plaintiff establishes that the single act is one of many. In other words, "such acts would justify liability of the municipality if, for example, they were . . . sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012).

Ms. Fraser refers generally to NYPD officers' consistent and widespread use of excessive force as an official policy. (*See* Am. Compl. ¶¶ 82-84.) In support of this argument, Ms. Fraser attached a December 2020 report on an investigation conducted

14

by the New York City Department of Investigation titled *Investigation into NYPD Response to George Floyd Protests* (hereinafter, "DOI Report") to her opposition motion. (*See* DOI Report (Dkt. 21-3).)[4] She notes the DOI Report's findings about police officers' "use of force and certain crowd control tactics to respond to the Floyd protests," which included the use of batons. (*See id.* at 3, 42-43.)

Courts in this circuit have allowed plaintiffs to rely on governmental reports to "adequately plead the existence of de facto customs or policies." *Felix v. City of N.Y.*, 344 F. Supp. 3d 644, 658 (S.D.N.Y. 2018) (holding that a report from the Inspector General for the NYPD and references to a series of lawsuits could "substantiate policymakers' awareness of the NYPD's deficient policies"); *see also Lopez v. City of N.Y.*, 20-CV-2502 (LJL), 2022 WL 2078194, at *8 (S.D.N.Y June 9, 2022) (holding that a Mollen Commission report could have supported a plaintiff's claim of widespread "police falsification" had the report established that the falsifications continued through the relevant time period); *Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 544 (S.D.N.Y. 2015) ("[T]he DOJ Report appended to Plaintiff's

---

[4] Defendant argues that the court may not consider the DOI Report since it was not attached to the Amended Complaint nor sufficiently referenced in the Amended Complaint. Though the DOI Report was not attached to the Amended Complaint, there are multiple references to and discussions of the report within the Amended Complaint, which in the court's view, constitutes "a clear, definite, and substantial reference." *Trump v. Vance*, 977 F.3d 198, 210 n.8 (2d Cir. 2020) (holding that two brief quotations from a New York Times article in the Second Amended Complaint, which did not include the title or date of the article, allowed the panel to consider the entire article because the reference "[wa]s far more substantial than a mere passing reference"); *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (holding that two documents were incorporated by reference to the complaint where the complaint "explicitly refer[red] to and relie[d] upon" them). However, the court does not consider the reports first referenced in her opposition.

Complaint is sufficient to allege a widespread practice at [the local jail] of which policymakers were aware.").

"That a report was published after the subject incident does not prevent plaintiffs from relying on it—provided plaintiffs plead other allegations from which the court may infer high-level policymakers' acquiescence." *Felix*, 344 F. Supp. 3d at 658. In *Felix*, the court found that the report "adequately reflect[ed] the City's notice of problems that occurred prior to its publication," where "[i]t discusse[d] extensive research and planning" that had occurred well in advance of the incident, and the "[r]eport was an internal document rather than a document developed by an outside agency." *Id.* at 658. Thus, the court found that the plaintiffs were "rely[ing] on the report not for the notice it provided on its date of publication, but for the inference it supports that high-level policymakers were aware of the alleged deficiencies at the time of" the relevant incident. *Id.* So too here, Ms. Fraser attempts to rely on the DOI Report for the inference of prior notice.

However, the DOI Report, which is not an internal document, does not indicate that the NYPD had notice of the widespread use of excessive force prior to the protests in May 2020. At the outset, the City correctly points out that the DOI Report did not "reach[] the conclusion that the NYPD had unconstitutional policies or patrol guide procedures," and Ms. Fraser "fails to identify any policies and procedures that could possibly be the cause of [her] harm." (Mot. at 6.) In fact, the DOI Report spends few of its 111 pages discussing excessive force. Though the DOI Report mentions earlier protests implicating First Amendment freedoms, such as the Occupy Wall Street protests, it does not state that excessive force was an issue at these earlier protests such that the NYPD would have had notice of the issue. (DOI Report at 6.) The DOI Report discusses excessive force as part of its finding that "the NYPD's primary strategy appears to have involved the application of disorder control tactics and methods." (*Id.* at 35.) It

explains that "there were allegations of individual instances of excessive force, some widely reported, such as the police vehicle in Brooklyn driving into a crowd, excessive use of batons, and use of pepper spray." (*Id.* at 42.) Staff from the NYPD's Community Affairs Unit "confirmed observing instances that they believed to constitute disproportionate force by officers, including punching, kicking, tackling, or using batons to strike protesters. (*Id.* at 43.) The NYPD executives who were consulted on the report "noted their agreement with disciplinary action against officers involved in particular reported incidents," but beyond the reported incidents, "did not believe officers engaged in widespread excessive force during the protests." (*Id.*) The court has not seen anything in the DOI Report indicating that high-level NYPD officials were aware of this issue prior to the May 2020 protests.

In her opposition motion, Ms. Fraser also directs the court to *In re New York City Policing During Summer 2020 Demonstrations*, in which the plaintiffs alleged similar excessive force claims arising out of the same series of protests. 548 F. Supp. 3d 383, 401 (S.D.N.Y 2021). There, plaintiffs relied on the same DOI report, in addition to non-governmental organization reports documenting police misconduct at protests in earlier decades; several lawsuits alleging incidences of police brutality; thousands of Civilian Complaint Review Board complaints in response to NYPD practices at the May-June 2020 protests, reports from the New York Attorney General's Office, Human Rights Watch, and Corporation Counsel; and the incidents alleged in the complaints. *Id.* at 401. Based on this comprehensive evidence, the court concluded that the plaintiffs had sufficiently demonstrated the existence of an official policy, as compared to the single DOI Report relied on here. *Id.* at 402.

Even drawing all inferences in Ms. Fraser's favor, the court cannot conclude on the basis of a single allegation and one report

published after the incident that she has stated a claim for an unconstitutional policy of excessive force. Accordingly, the City's motion to dismiss the *Monell* claim for unconstitutional policies is GRANTED. If Ms. Fraser seeks to file another amended complaint on this cause of action, she should consider appending more extensive evidence of the alleged unconstitutional policy, along the lines of what the plaintiffs submitted in *In re New York City Policing During Summer 2020 Demonstrations*.

### 2. Inadequate Training

Defendants also move to dismiss Ms. Fraser's *Monell* claim that the City is liable under § 1983 for failing to adequately train the Officers. She alleges that the City inadequately trained its officers, in particular on how to police First Amendment-protected expression at protests. (Am. Compl. ¶¶ 86-99.)

Inadequate training may be the basis of a § 1983 claim where the municipality has displayed "deliberate indifference to the rights of persons with whom the police come into contact." *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To establish that a municipality's failure to train its employees amounts to "deliberate indifference," a plaintiff must plead some facts that, if proven, would tend to show that (1) "a policymaker knows to a moral certainty that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice . . . will frequently cause the deprivation of a citizen's constitutional rights." *Jenkins v. City of N.Y.*, 478 F.3d 76, 94 (2d Cir. 2007). Additionally, the policymaker's deliberate indifference in training must cause the injury and "be based on more than the mere fact that the misconduct occurred in the first place." *Amnesty America v. Town of W. Hartford*, 361 F.3d 113, 129-31 (2d Cir. 2004).

At the motion dismiss stage, plaintiffs alleging the failure to train "confront pleading standards that threaten their ability to press their claims beyond mere accusation." *Osterhoudt v. City of N.Y.*, No. 10-CV-3173 (RJD) (RML), 2012 WL 4481927, at *2 (E.D.N.Y. Sept, 27, 2012). This is in large part because "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." *Amnesty America*, 361 F.3d at 130 n.10.

In recognition of these difficulties, the Second Circuit has held that a plaintiff "need only plead that the city's failure to train caused the constitutional violation." *Id.*; *see also Jackson v. Nassau Cnty.*, 552 F. Supp. 32 350, 380-81 (E.D.N.Y. 2021) (denying motion to dismiss inadequate training claim where plaintiff relied on the court's earlier decision in another case "discussing allegations of misconduct by County investigators. . . for fabrication of evidence and coercive interrogation tactics"); *Reyes v. Cnty. of Suffolk*, 995 F. Supp. 2d 215, 231 (E.D.N.Y. 2014) (allowing inadequate training claim to proceed where plaintiff alleged three other examples of the same alleged failure); *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 46 (E.D.N.Y. 2011) (allowing inadequate training claim to proceed even though plaintiff "d[id] not plead much factual detail concerning Suffolk County's training programs").

Ms. Fraser alleges that the City failed to train police officers to "specifically address First Amendment-Protected Expression, including the failure to facilitate a peaceful assembly." (Am. Compl. ¶ 89.) With respect to the first prong from *Jenkins*, she has alleged the policymakers' knowledge that its employees would confront this situation. Specifically, she asserts that the City was "aware of the need to create and implement policies, practices, and procedures . . . for policing of protests and crowds . . . exercising their First Amendment Rights." (*See id.* ¶ 92.) On

the second prong, she alleges that the City did not provide "sufficient training on policing First Amendment-Protected Expression" despite knowing Officers would police "protests and crowds who were exercising their First Amendment Rights." (*See id.* ¶¶ 92-94.) Finally, she has alleged causation—that the City's lack of training led to her injuries. (*Id.* ¶ 94.) She supports these allegations with references to the DOI Report, which provides, among other things, that the NYPD does not have policies specific to policing protests and that "other than for personnel assigned to [the Strategic Response Group] . . . , prior to the Floyd protests, NYPD lacked standardized, agencywide, in-service training related to policing protests." (*See* Compl. ¶¶ 90-93; DOI Report at 34-35, 56, 60-61.)[5]

For these reasons, Ms. Fraser "has nudged [her] claims across the line from conceivable to plausible," *Osterhoudt*, 2012 WL 4481927, at *2 (quoting *Twombly*, 550 U.S. at 570), and the City's motion to dismiss this claim is DENIED.

### E.   Amendments to the Complaint

Under Federal Rule of Civil Procedure 15, leave to amend should be "freely" granted "when justice so requires," Fed. R. Civ. P. 15(a)(2). It should not be denied "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "If the underlying facts or

---

[5] Though Ms. Fraser also references a second report on policing and the NYPD patrol guide, neither of which were submitted to the court, in alleging inadequate training, the court does not find these documents to be persuasive. Though the second report generally finds that improvements in training are warranted for policing protests, this finding is not specific to the NYPD. With respect to the NYPD patrol guide, Ms. Fraser does not point to any specific problems.

circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.*

Ms. Fraser has amended her complaint once, and the record does not indicate that she has repeatedly submitted deficient pleadings. Given the liberal standard set forth in Rule 15(a), the court declines to *ex ante* issue an order prohibiting Ms. Fraser from further amending her complaint. However, she is warned not to continue seeking relief under causes of action that would be impermissibly duplicative, such as her Fourteenth Amendment, IIED, and NIED claims, or are inconsistent with her factual allegations, such as her negligent hiring, supervision, and retention claim. Ms. Fraser's counsel is directed to conduct research on the legal standards of any claims she asserts, so as to avoid wasting the court's time with meritless claims.

21

## IV. CONCLUSION

For the reasons stated above, the City's motion to dismiss Ms. Fraser's Fourteenth Amendment claim, intentional and negligent infliction of emotional distress claims, negligent hiring, supervision, and retention claim, and *Monell* claim for unconstitutional policies is GRANTED. The City's motion to dismiss Ms. Fraser's First Amendment claim and *Monell* claim for inadequate training is DENIED. The NYPD is removed as a Defendant because the NYPD is not a suable entity. The court declines to issue an order prohibiting Ms. Fraser from further amending her complaint.

SO ORDERED.

Dated:    Brooklyn, New York
          July 28, 2022

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge